UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Lotfolah Kaveh Afrasiabi, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     vs. | ) | |
| The Government of Islamic | ) | |
| Republic of Iran, | ) | Docket Number: |
| Mission of Iran to United Nations, | ) | |
| Mohammad Javad Zarif, | ) | |
| Ali Khoshroo, | ) | |
| Mrs.  Ebrahimi, | ) | |
| Seyed Torbatnejad, | ) | |
|     Defendants. | ) | |

## COMPLAINT

### Preliminary Statement

This is a civil action brought by the Plaintiff Lotfolah Kaveh Afrasiabi pursuant to the laws of the United States against the Defendants alleging fraudulent action and negligence by them when they hired him as a consultant to the Mission of Iran to the United Nations and renewed his employment over the years, causing him significant damages.  Plaintiff demands a sum of fifty million dollars from the Defendants to recover from his damages.

### The Parties

1. Plaintiff Lotfolah Kaveh Afrasiabi is a citizen of Iran and has been a permanent resident of the United States since 1985.  He is a resident of the District of Massachusetts.

2. Plaintiff Afrasiabi holds a Ph.D. in Political Science from Boston University, class of 1988. As part of his Ph.D. he wrote a 500 page doctoral dissertation titled "State and Populism in Iran" under the supervision of historian Howard Zinn.

3. Plaintiff Afrasiabi has also studied comparative theology at Andover-Newton Theological School (1996-1998), and is the founder of an inter-faith group, Global Interfaith Peace.

1

4. Plaintiff Afrasiabi has done post-doctoral studies at Harvard University, University of California at Berkeley, and State University of New York at Binghamton, New York.

5. Plaintiff Afrasiabi has done research at a Tehran think tank, the Center For Strategic Research (2005-2007).

6. Plaintiff Afrasiabi has taught as a visiting professor at Tehran's College of International Relations (2005-2006).

7. Plaintiff Afrasiabi has taught courses or been an adjunct professor at Boston University, Northeastern University, Bentley College, Chapman University, and the University of Massachusetts.

8. Plaintiff Afrasiabi is a former adviser to Iran's nuclear negotiation team (2004-2006).

9. Plaintiff Afrasiabi is a former visiting professor of international relations at Tehran University (2005-2006).   In this position he taught a course on Iran and Its Neighbors and Theories of International Relations.

10. Afrasiabi is a former consultant to the United Nations's Program on Dialogue Among Civilizations and former chair of the World Youth Festival on Dialogue, in Vilnius, Lithuania, Summer 2000.

11. Afrasiabi is a former international affairs consultant to Iran's Mission to the United Nations (2007-2021).

12. Afrasiabi is an expert on Iran's foreign and nuclear affairs and has published several books and numerous scholarly and opinion articles on this subject.  In addition, over the years Afrasiabi has made numerous television appearances as an Iran expert, including on CNN, MSNBC, PBS, BBC, Canadian TV, RT International, Press TV, C-Span, CGTN,  Voice of America, and podcasts of Council on Foreign Relations (three times).

13. Afrasiabi's has written many books on Iran that include the following:

After Khomeini: New Directions in Iran's Foreign Policy (Westview Books, 1994);

Iran Nuclear Program: Debating Facts versus Fiction (booksurge, 2006);

Iran's Foreign Policy After September 11, co-authored with Abbas Maleki (BookSurge, 2003);

Iran Phobia and US Terror Plot: A Legal Deconstruction (Amazon Books, 2012);

Iran Nuclear Negotiations: Accord and Détente Since the Geneva Agreement of 2013 (Rowman & Littlefield, 2015);

Iran Nuclear Accord and the Remaking of the Middle East (Rowman & Littlefield, 2017);

Trump and Iran: From Containment to Confrontation (Lexington Books, 2019), highly-reviewed in June, 2020 issue of Foreign Affairs.

Mahdism, Shiism, and Communicative Eco-Theology, with introduction by Professor Mohsen Eslami (Amazon Books, 2015).

14. Afrasiabi is the author of more than two dozen articles in the New York Times.   Afrasiabi is also the author of several articles in Bulletin of Atomic Scientists.  Afrasiabi is the author of a dozen opinion articles in the Boston Globe.  Afrasiabi is the author of 7 opinion pieces in the San Francisco Chronicle.  Afrasiabi has assembled his opinion articles in the compendium titled, Agent of Peace (2021).  Afrasiabi has authored several articles in the United Nations quarterly, United Nations Chronicle, including an interview with the former Iran's President, Mohammad Khatami and with Iran's ambassador to UN, Mohammad Khazaee (reprinted in the book, UN Management Reform 2011).

15. Afrasiabi has also authored pieces in a number of European newspapers and journals including International Herald Tribune, Der Tagesspiegel, and London's Guardian.

16. Plaintiff Afrasiabi's writings have repeatedly appeared in Iran in publications  and outlets IRDIPLOMACY, Iran Review, Tehran Times, Kayhan Havaii, Iran Daily, Press TV.

17. Plaintiff's scholarly articles on Iran have appeared in the Columbia Journal of International Affairs, Brown's Journal of World Affairs (three times), Harvard International Review, Global Dialogue, Iranian Journal of International Affairs, Middle East Journal, Middle East Eye, Middle East Executive Report, Middle East Insight, MERIP Report, Mediterranean Affairs, and Telos.

Defendants

18. The Mission of the Islamic Republic of Iran to the United Nations is located at 622 Third Avenue, New York, New York.  It is the Iranian government's representative to the United Nations.

19.  Mohammad Javad Zarif is a former Iranian ambassador to the United Nations from the years 2002 to 2007.

20.  Gholamali Khoshroo is a former Iranian ambassador to the United Nations from the years 2015 to 2018.

21.  Mrs. Ebrahimi is an employee of the Mission of Islamic Republic of Iran to the United Nations.

22. Mr. Torbatnejad is an employee of the Mission of Islamic Republic of Iran to United Nations.

Statement of Facts

23. Plaintiff Afrasiabi as an Iran expert has had a long rapport with the Mission of Iran to the United Nations since the publication of his first article in the New York Times, titled 'Give Iran Credit for the Strides It Has Taken' in 1990.   Afrasiabi was contacted by Mr. Mike

4

Wallace of CBS "60 Minutes" after the publication of this article to act as a consultant on Iran for CBS. Afrasiabi then arranged a meeting of Wallace and Iran's ambassador to the United Nations Kemal Kharazi, as well as subsequent appearances of Mr. Kharazi on CBS World News on the subject of Iraq's illegal invasion of Kuwait.

24. Plaintiff Afrasiabi as an Iran expert has participated in several conferences at Iran's think tank, Institute for Political and International Studies (IPIS).

25. In 2005, at the request of Iran's former ambassador to the United Nations, Nejadhosseinian, acting as Deputy Oil Minister, Afrasiabi represented the Iran Oil Ministry at two international oil conferences in Istanbul and Baku, Azerbaijan, in 2005.

26. As an Iran expert, Plaintiff Afrasiabi accompanied the Iranian President Mohammad Khatami in several foreign trips to Turkmenistan, Germany, Spain, and UN in New York.

27. In September, 2007, as a professor of international relations at Bentley College, Afrasiabi appeared at the National Press Club in Washington, D.C., as the "guest of Iran's President." This event was televised live by C-Span.

28. Afrasiabi repeatedly used his rapport with Iran for the sake of U.S. hostages in Iran. A case in point is when Afrasiabi collaborated with the M.I.T. Linguistics Professor Noam Chomsky for the release of three American hikers held in Iran in the years 2008-2009. Also, Afrasiabi helped the family of an F.B.I. agent Robert Levinson, who was missing in Iran. Afrasiabi refused the family's offer of monetary compensation for his humanitarian efforts.

29. In 2008, Afrasiabi and the Director of Preventive Diplomacy at Harvard's Kennedy School of Government, Ashton Carter, collaborated in a joint proposal to Iran and US for an "incident at sea agreement" aimed at preventing accidental warfare in the Persian Gulf.

Afrasiabi subsequently urged Iran's foreign minister, defendant Javad Zarif, after the signing of the Iran nuclear deal, to pursue this agreement and  the plaintiff received a positive response from Defendant Zarif in an email dated January, 2016.

30. In 2006, per Mr. Zarif's request, his fellow political scientist Afrasiabi went to San Francisco State University and spoke with Zarif's past advisor, Dwight Simpson, who confirmed that contrary to the anti-Zarif propaganda by one, Amir Taheri, Mr. Zarif was a graduate student at the time of US hostage-taking in Iran.  The news of Afrasiabi's effort in this regard was reported in the Nation Magazine, titled "Bunkum From Benador" (July 2006).

31. Over the years, Afrasibi interviewed Zarif three times, as well as other Iranian foreign ministers, Maouchehr Mottaki, Ali Akbar Salehi, as well as Deputy Foreign Minister Abbas Araghchi, for Asia Times.  Afrasiabi's last interview with Zarif was for the lobe.log website, titled "A Conversation with Iran's Foreign Minister Javad Zarif," dated April 29, 2019.

32. In early 2007, Plaintiff was approached by Defendant Zarif and was asked if he was interested in becoming a consultant to Iran's Mission to the United Nations. Afrasiabi wondered if that was legal and permitted given the US sanctions on Iran and Defendant Zarif told Afrasiabi that he will look into it further and will get back to him. Approximately two weeks later, Zarif informed Afrasiabi that he had "looked into" this matter and that the Mission was allowed to hire "two outside consultants" under the UN guidelines.

33. As a result of then ambassador Zarif representations, Plaintiff Afrasiabi agreed to act as an international affairs consultant to the Mission of Islamic Republic of Iran to United Nations as of the Spring, 2007.  Afrasiabi maintained this position until January 2021.  Per the terms

of his agreement with the Iran Mission, Afrasiabi received a monthly salary of $3000.00. As of April, 2011, Afrasiabi also received health insurance from the Iran Mission.

34. During the years 2007-2021, Afrasiabi as a leading Iran foreign policy expert participated in a number of US-Iran Track II Diplomacy discussions, together with a number of former US diplomats.  These meetings were held at US Association of United Nations in New York City, as well as at the Mission of Iran to United Nations.

35. With the exception of a few months when Iran's Mission to the United Nations had banking difficulties, Afrasiabi regularly received a check from the Mission of Iran for the amount of $3000.00.  Afrasiabi regularly deposited Iran's checks from the United Nations Credit Union in his account at Chase Manhattan Bank under his own name.

36.  Afrasiabi was repeatedly assured by several Iranian ambassadors to the United Nations that the Mission of Iran operated under the United Nations norms and guidelines and that his consulting role was fully legal and legitimate under the United Nations standards.

37. During the years 2007-2021, on five separate occasions, Afrasiabi was asked by the Mission of Iran to United Nations send his documents consisting of (a) copies of his passport, (b) copy of his green card, (c) copy of Cori Report (Criminal Record Check).   In 2007, Afrasiabi was asked to also send a fingerprint record along with these other documents.  Afrasiabi complied with all these requests and immediately responded to each request by sending the above-said documents to the Mission of Islamic Republic of Iran to the United Nations.  Afrasiabi was led to believe by the various ambassadors and other functionaries of the United Nations, including defendants Mrs. Ebrahimi and Mr. Torbatnejad, that the purpose of those documents was to be submitted to the United Nations

for registering Afrasiabi as a consultant. The latest such request for documents was made by Mr. Torbatnejad in October, 2020.

38. In 2017, Afrasiabi had a meeting with Iran's ambassador Khoshroo immediately after learning that another consultant to the Mission, Mr. Sheikhzadeh, had been charged with violating the U.S. laws by the U.S. government. Afrasiabi asked for that meeting and expressed his concern as to why a consultant to the Mission was in trouble. Defendant Khoshroo firmly assured Afrasiabi that Mr. Sheikhzadeh had been accused of money laundering and was not in trouble over his consulting role, and that Afrasiabi had nothing to worry about. Ambassador Khoshroo reiterated that Afrasiabi's consulting role was being registered at the United Nations and, again, per his request and a subsequent communication by Mrs. Ebrahimi, Afrasiabi was asked to re-send his documents above-mentioned. Afrasiabi fully complied with Mrs. Ebrahimi's communication request on two separate occasions.

39. In addition to the requests made by the Mission through Mrs. Ebrahimi, on three separate occasions Mr. Torbatnejad also made such requests for documents for submission to the United Nations and Afrasiabi fully complied with those requests as well.

40. In light of the various assurances given to him by the Iran ambassadors to the United Nations, as well as the various requests for his documents above-stated, Plaintiff Afrasiabi was fully convinced that his consulting role for Iran's Mission to the United Nations was fully legal and legitimate under the United Nations guidelines. Afrasiabi as a leading expert on Iran's nuclear affairs repeatedly offered his expert advice to Iran's Mission on Iran-U.S. nuclear negotiations.

41. In January 2021, Plaintiff Afrasiabi was arrested and charged with crimes related to his role as a consultant to the Iran Mission to the United Nations.  The plaintiff was completely shocked when he was subjected to this high-profile arrest by the Federal Bureau of Investigation, pursuant to the U.S. Department of Justice's charge of violating the Foreign Agent Registration Act (FARA).   Afrasiabi denied the allegations made against him and represented himself in court after his plea with the Iran Mission to UN to provide legal representation to him fell on deaf ears.

42. Shortly after his arrest, Afrasiabi lodged a formal complaint with the Ministry of Foreign Affairs of the Islamic Republic of Iran, which he sent through his standby attorney, Diedre Von Dornum, to both the Mission of Iran to the United Nations and to Iran's Interest Section in Washington, D.C.  In his complaint, Afrasiabi stated that he had been misled by the Mission of Iran to believe that his consulting role was legal and registered under the United Nations.  He demanded an explanation.  Afrasiabi sent a copy of this complaint to the Legal Department of the United Nations as well.

43. Throughout 2021-2023, Afrasiabi through his standby attorney wrote several letters of complaint to Iran's Mission and to the Defendant Zarif, complaining that as his employer the Mission of Iran needed to take full responsibility for what had happened to him.  The Mission of Iran failed to provide any financial relief to Afrasiabi during this time, nor did it provide any legal assistance.

44. As a result of the F.B.I. arrest, Plaintiff Afrasiabi was smeared throughout the U.S. media and the news of his arrest was carried by all the major U.S. news outlets including ABC World News, CBS Evening News, CNN International, Yahoo News and many others.

45. As a result of his arrest by the F.B.I., Afrasiabi spent three days in a federal jail.  He was subsequently released on a significant bail posted by Afrasiabi's family.  Conditions of his release included electronic monitoring with an ankle bracelet and home confinement. Under the harsh terms of his pre-trial release, for several months Afrasiabi was allowed to exit his house only a few hours a week.  Over time, the restrictions on house arrest were loosened and only in mid-2023 was the ankle bracelet attached to his leg removed. Afrasiabi was subject to a curfew for nearly two years.   The shame associated with the ankle bracelet attached to his leg prevented Afrasiabi from exiting his home and engaging in his normal activities including exercise.

46. As a result of his arrest by the F.B.I., Afrasiabi became the target of numerous attacks on social media by the various Iran opposition groups, including by the group known as MEK and the supporters of the Iranian monarchy.  These groups posted numerous articles and videos on youtube.   Afrasiabi defended himself by responding to his critics through an article in Gooya News, stating the facts that (a) his role was limited to Iran's international affairs consulting, (b) he had never penned a single pro-Iran propaganda article, and (c) he had occasionally written articles critical of Iran whenever he saw fit.

47. In September, 2023, the Federal criminal charges against Afrasiabi were dropped pursuant to an Executive Grant of Clemency by President Joseph Biden.

48. Afrasiabi welcomed the dismissal of charges against him as he was innocent.  However, as a result of the Presidential Pardon he was named as one of the "Swapped prisoners" in U.S. media, even though he was not a prisoner and, in fact, he had been teaching at University of Massachusetts during the summer and Fall of 2022 (until the University under pressure by the Iran opposition groups dismissed Afrasiabi in the middle of semester solely due to

the pending charges against him in the federal court in New York).  Afrasiabi's mid-semester dismissal from the university was yet another indication of the long-term damages to his career as a result of the federal criminal charges against him.

49. In October and November, 2023, Afrasiabi wrote several complaint letters to the Defendant Zarif and Iran's Mission to the United Nations, complaining that he was misled by them about the legality of his consulting role.  Defendant Zarif dismissed Afrasiabi's complaint and stated in writing that he did not know about U.S. law and was only a political scientist at the time of Afrasiabi's hiring by Iran's Mission.

50. In response to Defendant Zarif's statement of lack of knowledge of U.S. laws, Afrasiabi stated that under the U.S. law, specifically the doctrine of "respondent superior" the employer is responsible for the legal ramifications of a job offered to an employee, and that therefore Afrasiabi is entitled to a full compensation for the damages brought about by the negligent and misleading information given to him by the Defendants (assuring him that his consulting role was registered with the United Nations).

51. Afrasiabi would never have accepted the consulting position with Iran's Mission to the United Nations had he not been repeatedly mislead and negligently assured by the Defendants that this position was a United Nations authorized role.   Defendants either intentionally or through negligence failed to examine the legal dimension of the consulting role they offered Afrasiabi, and they are solely responsible for the dire consequences Afrasiabi suffered including his subsequent arrest, incarceration, prosecution, house arrest, public defamation, job loss, and significant damages to his reputation and to his career.

COUNT 1: NEGLIGENT MISREPRESENTATION AND

FRAUDULENT HIRING OF AFRASIABI BY ALL THE DEFENDANTS

52. Plaintiff Afrasiabi repeats, realleges, and incorporates by reference each and every allegation set forth herein, as if set forth fully below.

53. Plaintiff Afrasiabi alleges that the Defendants engaged in a fraudulent practice by negligently and falsely repeatedly assuring him that his consulting role for Iran's Mission to the United Nations was legal and registered at the United Nations. Defendants knew or should have known that these assurances to Afrasiabi were not true and they misled Afrasiabi to believe that their repeated requests for his documents were for submission to the United Nations.

COUNT 2: NEGLIGENT MISREPRESENTATION AND FRAUDULENT

RENEWAL OF CONTRACT OR HIRING OF AFRASIABI BY ALL THE DEFENDANTS

54. Plaintiff Afrasiabi repeats, realleges, and incorporates by reference each and every allegation set forth herein, as if set forth fully below.

55. Plaintiff Afrasiabi alleges that the Defendants engaged in a fraudulent practice by negligently and falsely repeatedly assuring him that his consulting role for Iran's Mission to the United Nations was legal and registered at the United Nations. Defendants knew or should have known that these assurances to Afrasiabi were not true and they misled Afrasiabi to believe that their repeated requests for his documents were for submission to the United Nations.  This count alleges negligent misrepresentation and fraudulent conduct by all defendants in their actions renewing his most recent contract.

COUNT 3: NEGLIGENT MISREPRESENTATION AND
FRAUDULENT HIRING OF AFRASIABI BY DEFENDANTS THE GOVERNMENT OF
THE ISLAMIC REPUBLIC OF IRAN AND THE MISSION OF IRAN TO THE UNITED
NATIONS -RESPONDEAT SUPERIOR

56. Afrasiabi repeats, realleges, and incorporates by reference each and every allegation set
forth herein, as if set forth fully below.

57. Plaintiff Afrasiabi alleges that the Defendants the Government of the Islamic Republic of
Iran and the Mission of Iran to the United Nations acted negligently in offering Afrasiabi
employment, by failing to perform due diligence with respect to the legality of the
consulting role offered to Afrasiabi, by falsely assuring him that his role was fully legal
under the United Nations guidelines, and by failing to to submit Afrasiabi's requested
documents to the United Nations.

COUNT 4: NEGLIGENT MISREPRESENTATION AND FRAUDULENT
RENEWAL OF CONTRACT OR HIRING BY DEFENDANTS THE GOVERNMENT OF
THE ISLAMIC REPUBLIC OF IRAN AND THE MISSION OF IRAN TO THE UNITED
NATIONS – RESPONDEAT SUPERIOR

58. Afrasiabi repeats, realleges, and incorporates by reference each and every allegation set
forth herein, as if set forth fully below.

59. Plaintiff Afrasiabi alleges that the Defendants the Government of the Islamic Republic of
Iran and the Mission of Iran to the United Nations acted negligently in offering Afrasiabi
employment, by failing to perform due diligence with respect to the legality of the

consulting role offered to Afrasiabi, by falsely assuring him that his role was fully legal under the United Nations guidelines, and by failing to to submit Afrasiabi's requested documents to the United Nations.

## COUNT 5: INFLICTION OF EMOTIONAL DAMAGE
## AFRASIABI VERSUS THE DEFNDANTS

1. Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

2. Plaintiff Afrasiabi alleges the serious infliction of emotional damage to him by the Defendants, as a result of the willful deception and misleading practice for the intentional and negligent conduct by all defendants referenced in this complaint.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Afrasiabi prays for judgment in his favor and for the following:

1. Award compensatory damages against the Defendants in an amount to be determined at trial, together with interest, costs, and reasonable attorney's fees;

2. Award punitive damages against the Defendants in an amount; and,

3. Order further monetary, injunctive, and declaratory relief as this Court deems just and proper.

4. Award Plaintiffs' attorneys' fees, costs, and interest as permitted by law.

5. Order further monetary, injunctive, and declaratory relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Afrasiabi requests a trial by jury as to all issues in this case.

Respectfully submitted,
**Lotfolah Kaveh Afrasiabi**,
By his lawyer,

February 22, 2024

_/s/ William Keefe_
**William Keefe**
BBO: 556817
801 C Tremont Street
Boston, MA 02118
Telephone (617) 947-8483
Facsimile (617) 445-8002
Email: wkeefelaw@gmail.com