UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LOTFOLAH KAVEH AFRASIABI, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 24-10451-MJJ |
| THE GOVERNMENT OF ISLAMIC REPBLIC OF IRAN, ET. AL., | ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OF DECISION

March 11, 2025

JOUN, D.J.

Plaintiff Mr. Lotfolah Kaveh Afrasiabi brings claims against the Islamic Republic of Iran ("Iran"), the Mission of Iran to the United Nations ("Mission of Iran" or the "Mission"), and four former and current staff of the Mission ("Individual Defendants")[1] for "negligent misrepresentation and fraudulent hiring" as well as "infliction of emotional damage." [*See* Doc. No. 1]. In essence, Mr. Afrasiabi alleges that Defendants hired him as a consultant to the Mission and renewed his employment for years but failed to alert him that his employment required his registration as a foreign agent under the Foreign Agent Registration Act ("FARA") and failed to follow through on promises to register the employment officially with the United Nations ("UN"). The Mission and the Individual Defendants (referred to collectively as "Defendants")

---

[1] These individuals are Mohammad Javad Zarif (a former Iranian ambassador to the UN from 2002–07), Gholamali Khoshroo (a former Iranian ambassador to the UN from 2015–18), "Mrs. Ebrahimi" (an employee of Iran's Mission), and Seyed Torbatnejad (an employee of Iran's Mission). [Doc. No. 1 at ¶¶ 19–22].

filed a Motion to Dismiss, [Doc. No. 20], on July 19, 2024. Plaintiff filed a Motion for Default Judgment as to Iran, [Doc. No. 25], on August 20, 2024. A hearing on the Motion to Dismiss was held on October 24, 2024. On the day of the Motion to Dismiss hearing, Plaintiff filed a Motion to Supplement its opposition to the Motion to Dismiss. [Doc. No. 31].

As explained more fully below, this Court lacks subject matter jurisdiction to hear Plaintiff's claims against the Mission of Iran and lacks personal jurisdiction over the Individual Defendants. As such, Defendants' Motion to Dismiss is <u>GRANTED</u> and Plaintiff's Motion to Supplement is <u>DENIED</u> as moot.[2] Additionally, although Iran has not appeared or filed an answer in this action, this Court nevertheless lacks subject matter jurisdiction to hear Plaintiff's claims against Iran. Accordingly, Plaintiff's Motion for Default Judgment is <u>DENIED</u>.

**I.   BACKGROUND**

Mr. Afrasiabi is an accomplished foreign policy expert, who has published many books and articles in that area, taught at various universities, advised Iran in its foreign relations, served as a consultant concerning foreign relations, and appeared in the media. [Doc. No. 1 at ¶¶ 1–17]. He had a longstanding relationship with the Mission of Iran dating back to the 1990's. [*Id.* at ¶¶ 23–31]. In early 2007, Mr. Zarif asked Mr. Afrasiabi about his interest in becoming a consultant to the Mission. [*Id.* at ¶ 32]. When Mr. Afrasiabi inquired about the legality of such an arrangement, Mr. Zarif told him that "the Mission was allowed to hire 'two outside consultants' under the UN guidelines." [*Id.*].

In Spring 2007, Mr. Afrasiabi accepted a position as an "international affairs consultant" to the Mission, which he maintained until January 2021. [*Id.* at ¶ 33]. His salary was $3,000 in

---

[2] Defendants also argue that Plaintiff's Complaint should be dismissed for failure to state a claim under Rule 12(b)(6). Because I am dismissing this case based on jurisdictional grounds, I need not reach the merits of Defendants' 12(b)(6) arguments.

2

monthly checks, and in April 2011 he began receiving health insurance. [*Id.* at ¶¶ 33, 35]. During his employment, Mr. Afrasiabi "participated in a number of US-Iran Track II Diplomacy discussions" at meetings in New York. [*Id.* at ¶ 34]. He "repeatedly offered his expert advice to Iran's Mission on Iran-U.S. nuclear negotiations." [*Id.* at ¶ 40].

Several Iranian ambassadors to the UN repeatedly assured Mr. Afrasiabi that "his consulting role was fully legal and legitimate under the [UN] standards." [*Id.* at ¶ 36]. On five occasions, the Mission requested documents from Mr. Afrasiabi that he believed were for his registration with the UN as a consultant. [*Id.* at ¶ 37]. In 2017, Mr. Afrasiabi learned that another consultant to the Mission had been charged by the U.S. government with violating U.S. laws. [*Id.* at ¶ 38]. Immediately, he met with Mr. Khoshroo, who "firmly assured" Mr. Afrasiabi that the other consultant "was not in trouble over his consulting role, and that [Mr.] Afrasiabi had nothing to worry about." [*Id.*]. Mr. Khoshroo also reiterated that Mr. Afrasiabi's consulting role was being registered at the UN. [*Id.*]. The assurances and document requests "fully convinced" Mr. Afrasiabi that his consulting position with the Mission was "fully legal and legitimate under the [UN] guidelines." [*Id.* at ¶ 40].

In January 2021, the FBI arrested Mr. Afrasiabi, and the U.S. Department of Justice charged him with crimes relating to his consultant work for Iran's Mission, including violating FARA. [*Id.* at ¶ 41]. Mr. Afrasiabi spent three days in jail, before being released on bail with restrictions, including electronic monitoring, house arrest, and curfew. [*Id.* at ¶ 45]. Major U.S. news outlets publicized this arrest. [*Id.* at ¶ 44]. Iran opposition groups targeted him with attacks on social media. [*Id.* at ¶ 46]. He also lost a teaching job at the University of Massachusetts due to the criminal charges. [*Id.* at ¶ 48]. However, in September 2023, former President Biden granted Mr. Afrasiabi executive clemency. [*Id.* at ¶ 47].

Although Mr. Afrasiabi complained to Mr. Zarif and the Mission that they had misled him about legality of his consulting position, Mr. Zarif denied knowledge of U.S. law and stated he was only a political scientist. [*Id.* at ¶ 49]. Mr. Afrasiabi claims that Defendants are "solely responsible" for his "arrest, incarceration, prosecution, house arrest, public defamation, job loss, and significant damages to his reputation and to his career." [*Id.* at ¶ 51].

## II.   PROCEDURAL HISTORY

On February 26, 2024, Mr. Afrasiabi filed this action, bringing claims for "negligent misrepresentation and fraudulent hiring" (Counts I–IV), along with "infliction of emotional damage" (Count V), against Defendants. [Doc. No. 1]. On July 19, 2024, the Mission and the Individual Defendants filed a motion to dismiss. [Doc. No. 20]. On August 20, 2024, Mr. Afrasiabi filed an opposition and a motion for default judgment as to Iran. [Doc. Nos. 24, 25]. Defendants filed a reply on September 4, 2024. [Doc. No. 28]. On October 24, 2024, Plaintiff filed a Motion to Supplement its opposition to the Motion to Dismiss. [Doc. No. 31]. A hearing was held on the motion to dismiss on October 24, 2024. [Doc. No. 29].

## III.   LEGAL STANDARD

### A.  Rule 12(b)(1)

"When a defendant moves to dismiss for lack of federal subject matter jurisdiction, [] 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). "If the party fails to demonstrate a basis for jurisdiction, the district court must grant the motion to dismiss." *Id.* The district court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor" when ruling on a Rule 12(b)(1) motion. *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). In

4

evaluating whether the defendant has met its burden of proof, a court "may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations." *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000).

### B. Rule 12(b)(2)

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima facie' standard governs its determination." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).[3] Under this standard, a "district court acts not as a factfinder, but as a data collector," and considers whether the plaintiff has "proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 160 (1st Cir. 2022). The district court takes "jurisdictional facts in [plaintiff's] complaint," *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 123 (1st Cir. 2022), and facts from "whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts and embracing undisputed facts put forth by the defendant." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 93 (1st Cir. 2024) (cleaned up).

## IV. DISCUSSION

### A. The Mission Of Iran Is Dismissed For Lack Of Subject Matter Jurisdiction

The Mission argues that this Court lacks subject matter jurisdiction over this action under the Foreign Sovereign Immunities Act ("FSIA"). [Doc. No. 21 at 6-9]. The FSIA is the only

---

[3] This approach "controls" when, as here, the "motion is made at the inception of the case and the issue of jurisdiction is not intertwined with the merits." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 121 (1st Cir. 2022). Moreover, neither party has objected to the use of the prima facie method for determining personal jurisdiction. *See Lin v. TipRanks, Ltd.*, 19 F.4th 28, 33 (1st Cir. 2021).

basis for attaining jurisdiction over a foreign state and it "establishes a presumption of foreign sovereign immunity from the jurisdiction of the courts of the United States." *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Ints. in Int'l & Foreign Cts.*, 727 F.3d 10, 16 (1st Cir. 2013). However, the FSIA also provides a list of exceptions to immunity that, if applied, enable a case to be heard in federal court. *Merlini v. Canada*, 926 F.3d 21, 27 (1st Cir. 2019). Unless one of the FSIA's enumerated exceptions applies, "courts in the United States lack both subject matter and personal jurisdiction" over the foreign government. *Universal Trading & Inv. Co.*, 727 F.3d at 16 (citing 28 U.S.C. § 1330).

Any "agency or instrumentality" of a foreign state is considered to be a foreign sovereign for the purposes of the FSIA. *Kato v. Ishihara*, 360 F.3d 106, 110 (2nd Cir. 2004) (citing 28 U.S.C. § 1603(a)). As neither party disputes that the Mission is an agency of Iran, the FSIA applies to the Mission. I must therefore determine whether one of the FSIA's immunity exceptions applies to grant this Court jurisdiction over the Mission. Mr. Afrasiabi argues that two such exceptions apply in this case: the commercial activity exception and the torts exception. [Doc. No. 24 at 4-5]. I analyze each exception in turn below, starting with the commercial activity exception.

      a. **Commercial Activity Exception**

The FSIA's commercial activity exception states that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a). Courts use a two-step inquiry to determine whether this exception applies. *Merlini*, 926 F.3d at 27. The first step is identifying the "particular conduct" forming the basis of the plaintiff's claim. *Id.* The basis of a claim constitutes the "gravamen of the complaint," or "those elements of a

claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993). Simply put, the inquiry should pinpoint those actions taken by the foreign state which actually injured the plaintiff. *Keenan v. Holy*, 686 F. Supp. 3d 810, 826 (D. Minn. 2023). The second step involves determining whether such conduct is commercial or governmental in nature. *Merlini*, 926 F.3d at 28. In making this determination, "the question is not whether the foreign government [was] acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives," but whether the actions taken by the foreign state were "the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Id.* (alterations in original) (quoting *Rodriguez v. Republic of Costa Rica*, 297 F.3d 1, 6 (1st Cir. 2002)). Thus, the analysis should focus on the nature of the conduct instead of its purpose. *Id.* (citing *Rodriguez*, 297 F.3d at 5-6). Moreover, a foreign state engages in commercial activity "where it exercises 'only those powers that can also be exercised by private citizens,' as distinct from those 'powers peculiar to sovereigns.'" *Kato*, 360 F.3d at 111 (quoting *Nelson*, 507 U.S. at 360).

Applying the first step to the case at hand, the conduct forming the basis of Mr. Afrasiabi's complaint against the Mission is its alleged negligence and fraud in hiring him as an international affairs consultant and continuously renewing his employment contract, as he claims that Mission employees repeatedly and falsely assured him that his role for the Mission was legal and registered at the UN. The alleged misrepresentations in hiring Mr. Afrasiabi form the underlying conduct for all five Counts, including Count V for Infliction of Emotional Damage. *See OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35-36 (2015) (holding that all of plaintiff's claims are based on the same underlying conduct and that plaintiff should not be able to evade the FSIA's "restrictions through artful pleading").

Next, I must determine whether such conduct can be considered commercial activity. When the foreign state's underlying conduct involves the employment of the plaintiff, courts have consistently looked to the nature and content of the plaintiff's role as an employee to inform the nature of the foreign state's conduct. *Kato*, 360 F.3d at 112 (holding that a Japanese agency's employment of plaintiff to promote Japanese businesses in the United States was not a commercial activity because a typical private company would not promote companies other than itself); *see also Merlini*, 926 F.3d at 31 (concluding that a Canadian consulate's employment of plaintiff as an administrative assistant was a commercial activity because plaintiff was a United States citizen whose position was purely clerical); *Zveiter v. Brazilian Nat'l Superintendency of Merch. Marine*, 833 F. Supp. 1089, 1093 (S.D.N.Y. 1993) (deciding that employment of plaintiff as a secretary for Brazilian agencies in the United States was a commercial activity because "in employing a secretary, the foreign sovereign enters the marketplace and acts just as a private party would"). Indeed, the House Report on the FSIA clearly contemplated the nature of employment as a factor to consider in the commercial activity inquiry, identifying the employment of civil service, diplomatic, or military personnel as examples of governmental activities, and the employment "of laborers, clerical staff or public relations or marketing agents" as examples of commercial activities. *Kato*, 360 F.3d at 110 (citing H.R. Rep. No. 94-1487, at 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615).

While Mr. Afrasiabi contends that the Mission's hiring him as an outside consultant should be classified as a commercial activity given that it involved a contract with him as a private party and his role "fits the description of intellectual labor," his argument fails to fully account for the diplomatic nature of his role. [Doc. No. 24 at 4-6]. During his time working for the Mission, Mr. Afrasiabi joined U.S. diplomats in participating in multiple U.S.-Iran Track II

8

Diplomacy discussions and provided expert advice on Iran-U.S. nuclear negotiations. Such duties are not the type that a typical private employer engaging in commerce hires someone to perform. Rather, engaging in diplomatic discussions and providing advice on nuclear negotiations are responsibilities akin to those of civil service or diplomatic employees—the types of employment that the FSIA's legislative history identifies as governmental activities. *Kato*, 360 F.3d at 110 (citing H.R. Rep. No. 94-1487, at 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615). Moreover, unlike the plaintiff in *Merlini* who was employed by the Canadian consulate as an administrative assistant, Mr. Afrasiabi's responsibilities were not merely clerical, 926 F.3d at 31, and were more analogous to the plaintiff's job promoting Japanese business interests in *Kato*, which the court ruled to be a governmental activity given that promoting a country's business interests in general is a distinctly governmental endeavor. 360 F.3d at 112. That same logic should apply here, where Mr. Afrasiabi's experience engaging in diplomacy and providing advice on international negotiations relates to "those 'powers peculiar to sovereigns,'" as opposed to those that are exercised by private citizens. *Id.* at 111 (quoting *Nelson*, 507 U.S. at 360).

Contrary to Mr. Afrasiabi's assertion that the existence of a contract between him and the Mission renders the commercial activity exception applicable, courts have often evaluated what services or products are being contracted for before deciding that the contract is commercial in nature. *See, e.g.*, *Universal Trading & Inv. Co.*, 727 F.3d at 21-24. This approach is sound because, if the mere presence of a contract automatically applied the commercial activity exception, the exception would threaten to swallow the general presumption of foreign sovereign immunity. For example, in *Universal Trading & Inv. Co.*, the conduct at issue was the Ukrainian government's alleged breach of contract when it failed to pay a private American company for

9

its asset-recovery services. *Id.* at 12-13. While the court ultimately ruled that such conduct met the commercial activity exception, it distinguished the case from *Kato*, holding that the plaintiff "can neither be characterized as a government employee nor was it contracted to provide services akin to those provided by the plaintiff in *Kato*." *Id.* at 24. In Mr. Afrasiabi's case, he was being contracted to provide diplomatic services as a consultant for the Mission, making his circumstances closer to that of the plaintiff in *Kato* than the commercial contract at issue in *Universal Trading & Inv. Co.*

Additionally, part of the Mission's actions that Mr. Afrasiabi alleges were misleading—requesting that he send documentation for submission to the UN—are measures that are ostensibly governmental in nature, relating as they do to compliance with the rules of an intergovernmental organization. Because the Mission's actions in hiring Mr. Afrasiabi as a consultant with diplomatic duties and requesting his documents for submission to the UN amount to conduct that is distinctly governmental in character, the commercial activity exception to sovereign immunity does not apply here.

### b. Torts Exception

Mr. Afrasiabi also argues that the FSIA's torts exception to foreign sovereign immunity gives this Court jurisdiction over the Mission. The FSIA provides in relevant part that foreign sovereign immunity shall not apply in any case "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state." 28 U.S.C. § 1605(a)(5). However, it also states that this exception shall not apply to "any claim arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 1605(a)(5)(B). Given that Mr. Afrasiabi's claims against the Mission all arise out of the Mission's alleged misrepresentations regarding the

10

legality of his consulting role, § 1605(a)(5)(B) applies and bars the torts exception from giving this Court jurisdiction. *See Martinez v. Republic of Cuba*, 221 F. Supp. 3d 276, 287 (N.D.N.Y 2016) (ruling that the defendant's "fraud and deceit" in "misrepresenting his occupation and political allegiances to [plaintiff]" barred the application of the torts exception); *see also id.* ("Under this exception to the exception, 'any claim of which misstatements are an essential element is deemed to be a claim arising out of misrepresentation or deceit and, therefore, not cognizable under the . . . FSIA.'" (omission in original) (quoting *Travel Assocs. v. Kingdom of Swaziland*, No. 89-cv-1235, 1990 WL 134512, at *3 (D.D.C. Aug. 30, 1990)); *Keenan*, 686 F. Supp. 3d at 845-46 (holding that defendant's failure to warn about the priests' sexual misconduct counts as a misrepresentation which precludes the torts exception).

Since none of the exceptions to foreign sovereign immunity under the FSIA apply to empower subject matter jurisdiction over the Mission, all claims against the Mission are dismissed.

### B. Iran Is Dismissed For Lack Of Subject Matter Jurisdiction

Iran, as a foreign sovereign nation, is also entitled to immunity under the FSIA for the same reasons outlined above. *See, supra,* Section IV.A. However, Mr. Afrasiabi argues that under Federal Rule of Civil Procedure 55, default judgment should be entered against Iran given that Iran has failed to appear or file an answer in the instant action. While the clerk, pursuant to Rule 55(a), entered a default against Iran on June 5, 2024, [Doc. No. 11], final default judgment has yet to be entered against it. *See Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 377 (1st Cir. 2024) (explaining that "Rule 55 provides a two-step process for default judgment" where "[s]tep one is entry of default under Rule 55(a)" and "[s]tep two is entry of default judgment under Rule 55(b)"); *see also id.* ("To spell it out, the clerk may enter default judgment

[under 55(b)] if the claim is for a sum certain, if the clerk has been given an affidavit of the amount due, and provided that entry of default has been entered against a person . . . for failure to appear."). Therefore, it must be decided whether final default judgment should now be entered against Iran under Rule 55(b).

Courts have held that they have an "affirmative duty" to confirm they have "jurisdiction over both the subject matter and the parties" before a default judgment is entered. *Gambino v. Radiant Elec., LLC*, No. 17-cv-10034, 2017 WL 6544823, at * 2 (D. Mass. Dec. 21, 2017) (quoting *Plasterers' & Cement Masons' Loc. 40 Pension Fund v. Cap. Curbing Corp.*, No. 09-236, 2010 WL 1424722, at *2 (D.R.I. Mar. 12, 2010)); *see also IBEW Loc. 223 v. Coastal Elec., Inc.*, 2024 U.S. Dist. LEXIS 208135, at *3 (D. Mass. Nov. 15, 2024) ("Nevertheless, default judgment will not be warranted unless . . . the Court has both personal and subject matter jurisdiction"). As mentioned, this Court lacks subject matter jurisdiction to hear the case against Iran since Iran is entitled to foreign sovereign immunity under the FSIA. Therefore, default judgment is not warranted and the case against Iran is dismissed.

### C. The Individual Defendants Are Dismissed For Lack Of Personal Jurisdiction

The four named Individual Defendants—Mr. Zarif, Mr. Khoshroo, Mrs. Ebrahimi, and Mr. Torbatnejad—all argue that, under both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment, this Court lacks personal jurisdiction over them.[4]

---

[4] These Defendants also claim that they are derivatively immune under the FSIA given that they are all employed by the Iranian government, which is immune. [Doc. No. 21 at 9-10]; *see, supra,* Section IV.A. However, none of the cases Defendants cite in support of their derivative-immunity argument concern foreign sovereign immunity directly; and the Supreme Court has held that sovereign immunity for foreign officials is not governed by the FSIA. *See Samantar v. Yousuf*, 560 U.S. 305, 319 (2010) ("Reading the FSIA as a whole, there is nothing to suggest we should read 'foreign state' in § 1603(a) to include an official acting on behalf of the foreign state, and much to indicate that this meaning was not what Congress enacted").

[Doc. No. 21 at 11-15]. In response, Mr. Afrasiabi contends that this Court has general jurisdiction over all Defendants as a result of the business contacts maintained between the Mission of Iran in New York and Mr. Afrasiabi in Massachusetts.[5] [Doc. No. 24 at 6-8]. For reasons explained below, I find that this Court lacks personal jurisdiction over all four Individual Defendants under the Fourteenth Amendment. Since the claims against them can be dismissed based on constitutional due process, I do not reach the question of whether jurisdiction is warranted under Massachusetts' long-arm statute.

Personal jurisdiction under the Fourteenth Amendment can fall into one of two categories. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). The first, referred to as "general" jurisdiction, provides courts in the forum state personal jurisdiction over all claims against a particular defendant when the "defendant's in-state contacts [are] sufficiently 'continuous and systematic' to justify the exercise of general jurisdiction over claims unrelated to those contacts." *Id.* at 925. Thus, when a defendant's contacts with the forum state are substantial enough to warrant general jurisdiction, those contacts need not be related to the claim at issue to give courts in the state personal jurisdiction over the defendant. *Id.* For individual defendants, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 924. Here, Mr. Afrasiabi does not allege that any of the Individual Defendants are domiciled in Massachusetts.

---

[5] Mr. Afrasiabi also argues that, because exceptions to foreign sovereign immunity under the FSIA apply, this Court has jurisdiction over all Defendants under 28 U.S.C. § 1330. [Doc. No. 24 at 6-7]. This argument fails given that none of the FSIA exceptions apply. *See, supra,* Section IV.A. Additionally, the Supreme Court has held that immunity for foreign officials is not governed by the FSIA, and that personal jurisdiction over individual foreign officials must be established without the benefit of 28 U.S.C. § 1330, even if one of the FSIA exceptions applies. *See Samantar*, 560 U.S. at 324 n.20 ("[A] plaintiff will have to establish that the district court has personal jurisdiction over an official without the benefit of the FSIA provision that makes personal jurisdiction over a foreign state automatic when an exception to immunity applies and service of process has been accomplished in accordance with 28 U.S.C. § 1608").

Rather, failing to separate the Individual Defendants from the Mission, Mr. Afrasiabi argues that the Mission's contacts—and by extension those of the Individual Defendants who worked for the Mission—with Massachusetts from 2007-2021 were so "systematic and continuous" that general jurisdiction is warranted over all Defendants whether or not Defendants' contacts are related to the suit. [Doc. No. 24 at 7]. However, the question of personal jurisdiction must be analyzed separately with respect to each Individual Defendant. *See LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 2d 296, 301 (D. Mass. 2002) ("[F]or jurisdictional purposes, employees are 'not to be judged according to their employer's activities [but by whether they were] primary participants in the alleged wrongdoing' intentionally directed at the forum." (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984))).

There is nothing alleged in the complaint to suggest that any Individual Defendant's contacts with Massachusetts were substantial enough to warrant an exercise of general jurisdiction. Defendants' only contacts with Massachusetts were their contacts with *Mr. Afrasiabi's* presence in Massachusetts, communicating with him through mail, email, texts, and telephone calls about Mission-related topics. [Doc. No. 24 at 7]. Such contacts are more limited than those present in other cases in which courts have found a lack of jurisdiction, and thus "are manifestly insufficient to ground a claim of general jurisdiction in the present case." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992); *see, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (Texas district court could not exercise jurisdiction over a Colombian corporation that sent its CEO to Houston for contract negotiations; accepted "into its New York bank account checks drawn on a Houston bank;" bought equipment and training services from a Texas corporation; and sent personnel to that corporation's Texas facilities for training); *Noonan v. Winston Co.*,

135 F.3d 85, 93 (1st Cir. 1998) (Massachusetts district court could not exercise jurisdiction over a British company that sent an employee to Massachusetts to photograph the plaintiff, directly solicited business from a Massachusetts company, and received $585,000 in orders from that same company); *see also id.* (determining that the general jurisdiction inquiry "must be based on a fact-specific evaluation of [defendant's] contacts" and be "guided by the types of contacts deemed sufficiently continuous and systematic in other cases"). Because Plaintiff has not established general jurisdiction over any of the Individual Defendants, I must assess whether there is specific jurisdiction over them under Fourteenth Amendment.

The second category of personal jurisdiction, referred to as "specific jurisdiction," is case-specific and applicable only "when the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Goodyear Dunlop*, 564 U.S. at 923-24 (alterations in original) (quoting *Helicopteros*, 466 U.S. at 414 n.8). Courts use a three-prong test to decide whether defendant's "suit-related conduct creates the necessary minimum contacts with [the forum state]" to warrant jurisdiction, examining whether: (1) "the claim 'directly arise[s] out of, or relate[s] to, the defendant's forum state activities;'" (2) "the defendant's in-state contacts 'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;'" and (3) "the exercise of jurisdiction is reasonable." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014) (quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 60-61 (1st Cir. 2002)). I discuss these elements with respect to each Individual Defendant below.

      a. Mr. Zarif

Mr. Zarif was an Iranian ambassador to the UN whose main alleged involvement with the claims at issue was that he contacted Mr. Afrasiabi to gauge his interest in becoming a consultant to Iran's Mission to the UN, and that he subsequently assured Mr. Afrasiabi that his consulting role would comply with UN guidelines. [Doc. No. 1 at ¶ 32]. Beginning with the first prong and accepting as true Mr. Afrasiabi's allegation that Mr. Zarif initially contacted him about the job in Massachusetts, [Doc. No. 25-1 at ¶ 8], Mr. Zarif's in-state contacts are sufficiently related to Mr. Afrasiabi's claims to satisfy the relatedness prong. *See C.W. Downer & Co.*, 771 F.3d at 66 (holding that the "relatedness prong" is a "flexible, relaxed standard," requiring a "demonstrable nexus" to be shown between plaintiff's claims and the defendant's in-state conduct); *see also id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)) (explaining that "the Supreme Court has consistently rejected a physical contact test for personal jurisdiction" in light of the modern prevalence of interstate communication via mail and wire). Mr. Afrasiabi's claims are all based on the Mission's allegedly negligent and fraudulent hiring of him, so Mr. Zarif's initial outreach about the position is related to such events.

With regard to the second prong however, the facts are insufficient to demonstrate that Mr. Zarif purposefully availed himself of the benefits and protections of the laws of Massachusetts. Courts have held that the "cornerstones of [the purposeful availment] inquiry are voluntariness and foreseeability" and that the analysis should "place[] the emphasis on the defendant's intentions," prohibiting "jurisdiction based on 'random, fortuitous, or attenuated contacts.'" *Id.* at 66 (quoting *Carreras v. PMG Collins*, LLC, 660 F.3d 549, 555 (1st Cir. 2011)). Here, although Mr. Zarif intentionally contacted Mr. Afrasiabi in Massachusetts to discuss the consulting position with the Mission, there are no allegations that Mr. Zarif knew Mr. Afrasiabi

16

would be working for the Mission from Massachusetts or that Mr. Zarif *himself* was expecting to have "continuing and wide-reaching contacts" with Mr. Afrasiabi in Massachusetts in the future. *See id.* at 68 (explaining that jurisdiction has been found when the defendant has entered into "a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State," and that "[t]he number and duration of the remote contacts are significant to the analysis" (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014))). Mr. Zarif's role as an Iranian ambassador ceased in 2007—the year Mr. Afrasiabi was hired by the Mission—and there are no allegations that Mr. Zarif continued to communicate with Mr. Afrasiabi in Massachusetts after he was hired by the Mission. Without more, Mr. Zarif's few conversations with Mr. Afrasiabi about a job at the Mission are too attenuated to amount to the "substantial connection" required to demonstrate purposeful availment. *Id.* (quoting *Burger King*, 471 U.S. at 475); *see also LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 2d 296, 303-04 (D. Mass. 2002) (Massachusetts did not have jurisdiction over individual defendant who communicated with plaintiff by phone and fax about a business partnership because defendant himself was not a party to the contract with plaintiff and his "role in the instant dispute did not afford him notice that he might individually be haled into court in Massachusetts to answer for the actions of his employer"). Nor can jurisdiction in Massachusetts be foreseeable for Mr. Zarif when his personal contacts with the state were so few.

      Given that Mr. Afrasiabi fails to demonstrate purposeful availment, this Court lacks personal jurisdiction over Mr. Zarif and the claims against him should be dismissed. *See Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999) (explaining that the third element of reasonableness is only considered if the first two prongs are met, as "[a]n

affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction").

### b. Mrs. Ebrahimi and Mr. Torbatnejad

I tackle the specific jurisdiction inquiry with respect to Mrs. Ebrahimi and Mr. Torbatnejad together because they were both employees of the Mission whose alleged involvement with the underlying dispute is identical. Mr. Afrasiabi claims that both of these Defendants made repeated requests for his documents and assured him that they were for submission to the UN to register his role as a consultant. [Doc. No. 1 at ¶¶ 37-39]. Assuming that both Mrs. Ebrahimi and Mr. Torbatnejad made these communications with Mr. Afrasiabi while he was in Massachusetts, [Doc. No. 25-1 at ¶ 8], the relatedness prong is satisfied given that Mr. Afrasiabi alleges his contract was negligently and fraudulently renewed by the Mission and that these Defendants' requests for documents were part of the misrepresentations that misled him to continue working at the Mission.

With respect to the purposeful availment inquiry, there is nothing to suggest that either of these Defendants voluntarily reached out to Mr. Afrasiabi in Massachusetts on their own personal initiative. Indeed, Mr. Afrasiabi was already working for the Mission by the time they contacted him, and there is nothing to indicate that their requests for UN-related documents were outside the scope of their normal job responsibilities for the Mission. Thus, it would be a stretch to say that either Mrs. Ebrahimi or Mr. Torbatnejad purposefully and foreseeably availed themselves of the laws of Massachusetts. Rather, their attenuated communications with Mr. Afrasiabi in Massachusetts were a "fortuitous" consequence of their roles working for the Mission. *C.W. Downer & Co.*, 771 F.3d at 66; *see also LaVallee*, 193 F. Supp. 2d at 304 (ruling that no jurisdiction exists over defendant because "he was neither completely responsible for the

offending actions" of his employer and he never "stepped out of his role as [his employer's] emissary"). For these reasons, I find that Mr. Afrasiabi fails to show purposeful availment with respect to Mrs. Ebrahimi and Mr. Torbatnejad. Therefore, the claims against them should be dismissed for lack of personal jurisdiction.

### c. Mr. Khoshroo

Mr. Afrasiabi makes no allegations that Mr. Khoshroo ever communicated with him while he was in Massachusetts about topics related to his claims. Mr. Afrasiabi only alleges that Mr. Khoshroo assured him in his *New York* office that he had nothing to worry about because his role was being registered with the UN. [Doc. No. 25-1 at ¶ 9]. Absent any allegations of claim-related conduct in Massachusetts on the part of Mr. Khoshroo, specific jurisdiction cannot be found and the claims against him should be dismissed for lack of personal jurisdiction.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, [Doc. No. 20], is <u>GRANTED</u> and Plaintiff's Motion to Supplement its opposition, [Doc. No. 31], is <u>DENIED</u> as moot. Because this Court lacks subject matter jurisdiction to hear Plaintiff's claims against Iran, Plaintiff's Motion for Default Judgment, [Doc. No. 25], is <u>DENIED</u>.

SO ORDERED.

/s/ Myong J. Joun<br>
United States District Judge